UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY W. LARKINS,<br><br>           Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>           Defendant. | Case No. ED CV 07-1295-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB"). Plaintiff asks the Court to reverse the Agency's decision and award benefits or, in the alternative, to remand the case for further proceedings. For the reasons discussed below, the Agency's decision is affirmed.

Though Plaintiff has set forth in the Joint Stipulation that she is raising only two issues, she has, in fact, raised three: 1) the Administrative Law Judge ("ALJ") failed to properly consider the treating physician's opinion when he concluded at step two that

1 Plaintiff did not have a severe impairment; 2) the ALJ erred in
2 concluding that Plaintiff was not credible; and 3) the ALJ erred in
3 failing to provide a sufficient basis for rejecting the statements of
4 the lay witnesses.  None of these issues requires reversal or remand.
5      In her first claim of error, Plaintiff contends that the ALJ
6 erred when he found at step two that she did not have a severe
7 impairment.  She argues that the restrictions imposed on her by her
8 treating doctor mandated a finding that she suffered from a severe
9 impairment.  The Agency disagrees.  For the following reasons, the
10 Court concludes that the ALJ did not err at step two.
11      At step two of the sequential evaluation process, the ALJ is
12 tasked with determining which impairments are severe and which are not
13 severe.  20 C.F.R. § 404.1520.  A severe impairment is one that
14 significantly limits a claimant's ability to perform basic work
15 activities for a period of at least 12 months.  *Id.*  Basic work
16 activities include walking, standing, sitting, lifting, pushing,
17 reaching, carrying, and handling.  20 C.F.R. 1521(b)(1).
18      Plaintiff's treating physician, Dr. David Doty, found that
19 Plaintiff was restricted due to her knee injury from heavy lifting,
20 prolonged weight bearing, kneeling, crawling, hopping, skipping,
21 jumping, and climbing.  (AR 146-47.)  These limitations did not
22 establish that Plaintiff was significantly limited in performing basic
23 work activities.  To begin with, kneeling, crawling, hopping,
24 skipping, jumping, and climbing are not basic work activities under
25 the regulations, so any restrictions as to these activities were not

relevant to the step-two determination.[1]  Regarding Dr. Doty's restrictions on heavy lifting, this did not mean that Plaintiff was unable to lift--a basic work activity--only that she was restricted from heavy lifting.  The same holds true for the treating doctor's restriction on prolonged weight bearing.  Assuming weight bearing is akin to standing, the treating doctor did not limit Plaintiff from standing, only prolonged standing.  Again, this does not mean that she could not perform the basic work activity of standing.  Thus, the ALJ did not err when he determined that Plaintiff's knee impairment was not severe because it did not preclude her from performing basic work activities.

Plaintiff points out that Dr. Doty concluded that she was disabled under state worker's compensation definitions and that that should be controlling at step two.  Again, the Court disagrees.  The two systems, though similar, are not identical.  A treating doctor's conclusion that a claimant is disabled under state worker's compensation law does not mandate a finding under social security law that the claimant has a severe impairment at step two.

Where, as here, the ALJ's finding at step two that a claimant does not have a severe impairment is not inconsistent with the treating doctor's findings, the ALJ need not set forth reasons for rejecting the treating doctor's opinion.  Because Dr. Doty's findings regarding Plaintiff's limitations did not establish that her knee

---

[1] The Court notes that Plaintiff has stated at various times in the record that she was an active 1st grade teacher and, for example, would go up and down the aisles checking on her students in class and would play with them on the playground.  (AR 354.)  This does not change the analysis under the regulations at step two, however.

injury would preclude her from performing basic work activities, the ALJ did not have to explain why he was not following Dr. Doty's opinion.

Plaintiff also argues that a radiologist's report concerning an MRI in October 2004 established that she had a severe impairment. Plaintiff is wrong. The radiologist's interpretation of Plaintiff's MRI did not address any functional limitations resulting from Plaintiff's knee injuries. Rather, the radiologist merely identified abnormalities in the tissue around Plaintiff's knee that he detected based on the MRI. Thus, the radiologist's opinion does not establish that Plaintiff had a severe impairment.

In her second claim of error, Plaintiff contends that the ALJ erred when he failed to set forth specific and legitimate reasons for rejecting her testimony. (Joint Stip. at 10-12.) The Agency disagrees. For the following reasons, the Court sides with the Agency.

The ALJ rejected Plaintiff's credibility because: 1) she provided conflicting statements as to why she was no longer working; 2) the limited objective medical evidence did not support her claims of disability; 3) the medication she was taking for her knee was minimal; and 4) Plaintiff's daily activities were inconsistent with her claims of disability. (AR 19-20.) These are legitimate reasons for questioning a claimant's credibility. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (affirming ALJ's credibility finding where medical evidence did not support claimants allegations of pain and limitations); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ can consider claimant's daily activities in determining credibility); *Orteza v. Shalala*, 50 F.3d

748, 750 (9th Cir. 1995) (holding ALJ may consider medications and side effects of medications in assessing claimant's credibility); *Hudson v. Bowen*, 849 F.2d 433, 434-35 (9th Cir. 1988) (finding ALJ properly relied on inconsistencies in claimant's statements to find him not credible).  Further, these reasons were supported by substantial evidence in the record.  (AR 70, 73 (Plaintiff told Agency interviewer in disability case in February 2005 that she was forced to retire due to conflicts with school administrators and students' parents; but, in a January 2004 filing related to her retirement benefits claim, she told the Agency that she was forced to retire from job due to a fall in 2003)); (AR 147 (Treating doctor noted that Plaintiff needed vocational training, presumably to return to the workforce)); (AR 76 (Plaintiff reported not taking any medication for her knee in February 2005 submission to Agency)); (AR 108 (Plaintiff listed her daily activities, including going to Senior Center, exercising, errands, and light housework, suggesting a greater ability to function than alleged)).  The ALJ's finding that Plaintiff was not credible is affirmed because it is a reasonable interpretation of the evidence and is supported by substantial evidence.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).[2]

---

[2] This is not to suggest that the Court would have arrived at this conclusion had it been the Court's to make in the first place. Looking at this record as a whole, Plaintiff does not appear to be someone who is trying to milk the system for undeserved benefits. She taught for almost 40 years before being diagnosed with breast cancer in 2002, when she was 63 years old. After having surgery in June 2002, she returned to teach three months later. She fell in September and hurt herself and was back at work two days later. She then worked for 15 months before, apparently, being forced from her job due to conflicts with parents and administrators at the school. Were this credibility decision mine in the first place, I would have reached the
(continued...)

Finally, as an apparent afterthought, Plaintiff argues that the ALJ erred in rejecting the statements of 12 lay witnesses who submitted letters attesting to Plaintiff's difficulties in the aftermath of her fall in September 2003. (Joint Stip. at 12.) Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting them. (Joint Stip. at 12.) The Agency has not addressed this argument. (Joint Stip. at 12-15.) For the following reasons, the Court concludes that, though the ALJ erred here, the error was harmless.

An ALJ must consider lay witness testimony concerning a claimant's ability to work, *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006), and may discount the testimony only if he gives "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Testimony from someone in a position to observe a claimant's symptoms and daily activities is "competent evidence" that must be considered. *See Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988).

Of the 12 lay witnesses who provided input, the ALJ set forth specific reasons for rejecting the testimony of only one of them, Plaintiff's sister Dorothy Thompson. (AR 17.) As to the other 11

---

[2] (...continued)
opposite conclusion. But it is not. It is the ALJ's. And the Court cannot conclude that his decision was an unreasonable one. *Fair*, 885 F.2d at 604 ("It may well be that a different judge, evaluating the same evidence, would have found [claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") (citations omitted).

witnesses, he swept their statements aside in a single sentence: "[T]hese statements are not consistent with the objective medical findings in this case." (AR 19.)  Just last week, the Ninth Circuit held (again) that this is an insufficient basis for rejecting a lay witness's statement. *See Bruce v. Astrue*, 2009 WL 539945, at *2 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record."). Thus, the ALJ erred when he disregarded these statements because they were inconsistent with the medical evidence.  That being said, the Court must determine if the ALJ's error was harmless.  An ALJ's failure to consider competent lay witness testimony favorable to the claimant is harmless error if the Court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.  The Court concludes that this is the case here.

A careful review of the 11 statements reveals that they are of the nature of testimonials regarding Plaintiff's character and her dedication and commitment, not her functional limitations. (AR 83-94.)  Though some touch upon her physical therapy after her fall and the difficulties she experienced performing certain household chores--like taking out her garbage cans--none of them add anything to the record that had not been provided by the medical records or her

testimony.  Thus, had a reasonable ALJ fully credited this testimony it is clear to the Court that he or she would have arrived at the same result.  For this reason, this claim does not warrant remand.

For the reasons set forth above, the ALJ's decision is affirmed.

IT IS SO ORDERED.

DATED:     March  11  , 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\LARKINS, B 1295\Opinion.wpd

8